UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRIMROSE RETIREMENT COMMUNITIES, LLC, et al., | ) ) ) | CASE NO. 1:18-mc-0130 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| OMNI CONSTRUCTION COMPANY, INC., | ) ) ) | |
| DEFENDANT. | ) | |

This matter is before the Court on plaintiffs' motion to compel production of documents in response to subpoena issued to non-party JL Associates, filed on July 2, 2019. (Doc. No. 4 ("Mot.").) JL Associates, Inc. ("JL") filed an opposition brief (Doc. No. 9 ("Opp'n")) and plaintiffs replied (Doc. No. 12 ("Reply")).[1] For the reasons set forth herein, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

On October 25, 2018, Primrose Retirement Communities LLC and Jefferson City Retirement, LLC (collectively "Primrose") obtained a judgment confirming an arbitration award against Omni Construction Company, Inc. ("Omni"). *See Primrose Ret. Cmtys., LLC, v. Omni Constr. Co., Inc.*, No. 1:18-CV-1021, 2018 WL 5294569 (D.S.D. 2018). The judgment was later registered in the Northern District of Ohio. (*See* Doc. No. 1.)

---

[1] On August 29, 2019, plaintiffs filed an unopposed motion for an extension of time to file a reply. (Doc. No. 10.) That motion is hereby granted.

Omni ceased doing business after Primrose obtained the judgment against them. (Mot. at 33.[2]) Primrose served a subpoena on JL (the "Subpoena"), Omni's former accounting firm, in an effort to ascertain information related to Omni's assets available to satisfy its judgment. (*See* Doc. No. 3-1 ("Subpoena").) In addition to seeking Omni's tax and financial information, the Subpoena sought financial information related to Omni's president and sole shareholder, Richard Stone, and his wife, Suzanne Stone (collectively "the Stones"). (Subpoena at 26.)

Pursuant to the Subpoena, JL has produced Omni's tax returns for years 2015-2018. (Reply at 66.) But when Primrose inquired as to the other documents requested in the Subpoena, JL indicated that it turned over "all of the documentation in [its] … possession concerning Omni…." (Reply at 67.) Further, JL refuses to produce records related to the Stones "on relevancy grounds." (Opp'n at 53.) Primrose now seeks post-judgment discovery to identify assets available to satisfy its judgment.

## II. DISCUSSION

The scope of post-judgment discovery under the Federal Rules is broad. *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007) (citations omitted). Rule 69 governs the procedure for enforcing a judgment and permits a "judgment creditor … [to] obtain discovery from any person—including the judgment debtor—as provided in [the federal] rules…." Fed. R. Civ. P. 69(a)(2). Under the Rules, a party is permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" even if the information would otherwise "not be admissible in evidence…." Fed. R. Civ. P. 26(b)(1) "Information regarding a debtor's assets is particularly relevant to post-judgment discovery." *United States v. Schultz*, No. 2:07-mc-39, 2014 WL 1382409, at *6 (S.D. Ohio Apr. 8, 2014) (citing *FTC v. Trudeau*, No. 5:12MC35, 2012 WL 5463829 (N.D. Ohio Nov. 8, 2012)).

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

A judgment "creditor is entitled to 'utilize the full panoply of federal discovery measures' provided for under federal and state law to obtain information from parties and non-parties alike…." *Andrews v. Raphaelson*, No. 5:09-CV-077-JBC, 2009 WL 1211136, at *3 (E.D. Ky. Apr. 30, 2009) (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559 (S.D.N.Y. 1977)). However, district courts have discretion to limit the scope of discovery where the information sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The Court has 'wide discretion' to limit discovery, and must balance the relative benefits and burdens." *Price v. Hartford Life & Acc. Ins. Co.*, 746 F. Supp. 2d, 860, 867 (E.D. Mich. 2010) (quoting *Scales v. J.C. Bradford & Co.*, 925 F.2d 901,906 (6th Cir. 1991). Here, the most convenient and least burdensome source for obtaining the Stones' tax records is the Stones, not their accountant.

While tax returns are not privileged from civil discovery, a "judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided." *Ruth v. Superior Consultant Holdings Corp.*, No. 99-CV-71190-DT, 2000 WL 1769576 at *2 (E.D. Mich. Oct. 16, 2000) (quoting *Terwilliger v. York Intern. Corp.*, 176 F.R.D. 214, 216 (W.D. Va 1997)). In addition, professional tax preparers are not permitted to knowingly disclose any information furnished for the purpose of preparing of a federal tax return. 26 U.S.C. § 7216(a). Improper disclosure can result in fines and/or imprisonment. *Id.* Accountants may, however, disclose tax information "pursuant to an order of a court." *Id.* § 7216(b)(1)(B).

Due to the sensitive nature of tax records, some courts have even afforded tax records a quasi-privileged status. *See Terwilliger*, 176 F.R.D. at 216-17. However, "[t]he Sixth Circuit has not decided whether or not to adopt" the qualified privilege approach and "[d]istrict courts within the Sixth Circuit have both adopted and chose not to adopt the [approach]." *Nat'l Credit Union*

*Admin. Bd. v. Zovko*, No. 1:13CV1430, 2015 WL 13621463 at *3 (N.D. Ohio March 9, 2015). While not expressly adopting the qualified privilege approach, the Court is mindful of the cautionary approach other courts have taken to prevent unnecessary disclosure of tax returns. *See Shelbyville Hosp. Corp., v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046 at *4 (E.D. Tenn. Mar. 27, 2017) (declining to adopt the qualified-privilege approach "without direct guidance from the Sixth Circuit" while being mindful "of the emphasis that its sister courts" have placed on unnecessary disclosure of tax records).

### A. Production of the Stones' Tax Records

The Court finds that the Stones' tax information is relevant to determine whether Omni attempted to shield assets in response to the judgment order. Nonetheless, the information Primrose seeks is obtainable from a more appropriate source—the Stones. Primrose admits that "[a]s the President and sole shareholder of Omni Construction, Mr. Stone … is in the best position to know about Omni Construction's assets and transfer of assets." (Reply at 70). Yet there is no evidence that Primrose attempted to subpoena tax records from the Stones. Primrose sent notice of the Subpoena to Omni, not the Stones. (*See* Doc. No. 12-3 at 81.) In fact, there is no evidence that the Stones are even aware that Primrose is seeking their personal tax records.

This circuitous means of discovery has placed JL in a difficult position. Faced with the possibility of running afoul of 26 U.S.C. § 7216(a), JL was compelled to retain counsel to dispute a subpoena that would have been more appropriately served on the Stones. In addition, the party issuing a subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and "[t]he court for the district where compliance is required *must* enforce this duty…." Fed. R. Civ. P 45(d)(1) (emphasis added). By serving a subpoena on JL, rather than the Stones, Primrose shifted a substantial burden from a potentially culpable party, to an otherwise innocuous party. Such burden shifting should be avoided.

Further, the information that Primrose seeks can be more appropriately obtained from other sources. Primrose recently filed a complaint in this district against the Stones (the "Stones Litigation"). (Reply at 70.)[3] Primrose will be afforded full discovery of the Stones' financial records in that case. Primrose argues, "it is unclear if the Stones will provide the financial information requested from JL Associates during the discovery process." (*Id.* at 71.) That argument is unavailing.

The Stones Litigation is the appropriate forum to pursue the Stones' personal tax returns. First, the Stones are a party to that case and will have an opportunity to object to the production of their tax records. Second, it is unclear what position, if any, Mrs. Stone held at Omni. Mrs. Stone has a separate privacy interest in her financial information. *See Kumar v. Hilton Hotel Corp.*, No. 08-2689 D/P, 2009 WL 3681837 at *3 (W.D. Tenn. Oct. 30, 2009) (refusing to compel production of spouse's tax records to "protect her privacy interest[]"). The Stones Litigation will afford Primrose the opportunity to demonstrate why their need for discovery overcomes Mrs. Stone's privacy interest in her tax returns. Finally, if the Stones refuse to comply with discovery in the Stones Litigation, the presiding court will have a more fully-developed record upon which to rule on a motion to compel. For these reasons, Primrose's motion to compel production of the Stone's tax records is DENIED.

### B. Production of Omni's Tax Records

The Court's concerns related to notice and fairness do not apply with equal force as to Omni's tax returns. Omni was a party to the original action and is the judgment debtor in this action. As such, Omni was aware that Primrose was seeking post-judgment discovery to identify assets available to satisfy its judgment. Further, Omni was noticed of the Subpoena and, therefore, had the opportunity to move to quash the subpoena and oppose the current motion. (*See* Doc. No.

---

[3] The case is captioned *Primrose Ret. Cmtys., LLC, v. Omni Constr. Co.*, No. 1:19-cv-1771 (N.D. Ohio) (Boyko, J.).

12-3 at 81.) Thus, Omni's tax records should be produced if they are relevant to enforcing Primrose's judgment.

Omni ceased conducting business after Primrose obtained its judgment and Omni's assets are largely unaccounted for. (Mot. at 70.) Omni's tax records are relevant to determine whether Omni's assets were improperly transferred. Further, Primrose has a compelling need for Omni's tax returns because it is unlikely that the tax records are obtainable from other sources. Unlike the Stones, Omni was noticed of the Subpoena. Omni could have voluntarily disclosed its tax records or opposed the Subpoena. It did neither. Omni's silence, after receiving notice of the Subpoena, suggests that requesting tax records directly from Omni would have been futile. While Primrose could have avoided burdening JL—at least initially, by subpoenaing tax records directly from Omni—JL has already partially complied with the Subpoena as it relates to Omni's tax records. And producing any additional Omni documentation should cause no added burden to JL because most of the requested documents are "ready to be provided" to Primrose. (*See* Opp'n at 53.) For these reasons, the Court GRANTS Primrose's motion to compel as it relates to Omni and orders JL to produce all documentation in its possession and control requested in the Subpoena that is related to Omni.

### C. Sanctions Should Not be Issued Against JL

Primrose requests that the "Court hold JL Associates in contempt for failing to comply with the subpoena." (Mot. at 35.) The Court finds that JL's reluctance to disclose its client's tax records was likely the result of JL's obligations under 26 U.S.C. § 7216(a). As such, the Court declines to sanction or hold JL in contempt.

## III. CONCLUSION

For the reasons set forth above, the motion to compel (Doc. No. 4) is granted in part and denied in part. JL shall produce all documents in its control that are requested in the Subpoena that relate to Omni. JL shall not be compelled to produce documents related to the Stones.

**IT IS SO ORDERED**.

Dated: December 12, 2019

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**